IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAURICIO RICARDO QUESADA AVENDANO,

        Petitioner,

vs.                                               No. CIV 11-0556 JB/CG

KATHRYN ELIZABETH STONER SMITH,

        Respondent.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant Stoner's Emergency Motion for an Order Staying the Judgment Pending Appeal Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, filed August 19, 2011 (Doc. 30)("Motion to Stay"); and (ii) the Plaintiff Quesada's Motion for Court to Set Deadline for Respondent to Return Children to Mexico, filed August 22, 2011 (Doc. 35)("Motion to Set Deadline"). The Court held a hearing on September 15, 2011. The primary issues are: (i) whether the Court should enter an order staying the judgment ordering Defendant Kathryn Elizabeth Stoner Smith to return her and Plaintiff Mauricio Ricardo Quesada Avendano's children to Mexico pending appeal to the United States Court of Appeals for the Tenth Circuit; and (ii) whether the Court should set a deadline for K. Stoner to comply with its order and judgment. Because the Court concludes the relevant factors weigh against a stay, and because the Court concludes that K. Stoner has not otherwise made the requisite showing to justify a stay of the Court's order and judgment pending appeal, the Court will deny the Motion to Stay. Additionally, because the Court concludes that it cannot properly expand or enlarge its original order and judgment by setting a deadline for K. Stoner to return the children to Mexico, the Court will deny the Motion to Set Deadline.

## PROCEDURAL BACKGROUND

On June 23, 2011, Quesada filed a Verified Petition for Return of Children to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent. See Doc. 2 ("Petition"). He brought the Petition pursuant to the Hague Convention and to the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-10, ("ICARA"). He asked the Court to enter an order directing a prompt return of the children to Mexico. Quesada also asked the Court to enter an order commanding K. Stoner to appear in Court with the children to show cause why the children have been kept from him.

On July 1, 2011, the Court entered an Order to Show Cause. See Doc. 4. The Court ordered K. Stoner to appear before the Court with the children at a hearing, to show cause why the children should not be returned to Mexico, and to tell the Court why the Court should not grant the other relief that Quesada requested in the Petition. Also on July 1, 2011, the Court entered an Order Directing that Respondent Come Before the Court With Minor Children. See Doc. 5. The Court ordered K. Stoner and the children to come before the Court for a hearing and directed the United States Marshals Service to serve K. Stoner with the Court's order.

On July 11, 2011, K. Stoner filed her Motion to Dismiss Verified Petition for Return of Children to Petitioner Because the Hague Convention is not Applicable and Custody Litigation is in the United States, Third Judicial District Court County of Dona Ana, State of New Mexico. See Doc. 11. K. Stoner argued that the Court should dismiss the Petition, because the Hague Convention is not applicable to the facts of this case.

On July 27, 2011, K. Stoner filed the Respondent's Brief in Support of Her Motion to Dismiss. See Doc. 16. K. Stoner argued that Quesada cannot establish a prima-facie case for return. She argued that the United States, not Mexico, is the habitual residence of the parties' children. She

argued that the removal or retention was not wrongful and that Quesada's custody rights were not breached. She also asserted some of the affirmative defenses in Articles 12, 13, and 20 of the Hague Convention -- the well-settled defense, consent or acquiescence to the removal or retention, the grave-risk defense, the mature child objection to removal defense, and the public-policy defense.

On August 19, 2011, the Court issued its Memorandum Opinion, Findings of Fact, Conclusion of Law, and Order (Doc. 29)("MOO"). In its MOO, the Court granted in part and denied in part the Verified Petition for Return of Children to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent. See MOO at 47. The Court also denied K. Stoner's Motion to Dismiss Verified Petition for Return of Children to Petitioner Because the Hague Convention is Not Applicable and Custody Litigation is in the United States, Third Judicial District Court County of Dona Ana, State of New Mexico. See MOO at 47. The Court granted Quesada's petition for return of A. Stoner and V. Stoner to Mexico. See MOO at 47.

K. Stoner moves the Court for an emergency order staying the Court's judgment granting Quesada's petition to return the children to Mexico pending appeal to the Tenth Circuit. K. Stoner argues that Quesada did not establish a prima-facie case under Articles 3 and 4 of the Hague Convention, specifically that: (i) before removal or wrongful retention, the children were habitually residents of Mexico; (ii) the removal or retention was in breach of custody rights under the foreign country's law; and (iii) Quesada was exercising custody rights at the time of removal or wrongful detention. See Motion to Stay ¶ 1, at 1-2. K. Stoner argues that, absent a stay, she and the children will suffer irreparable damage from having to leave the United States and return to Mexico based on the unrelenting violence in Morelia, Michocan, Mexico, where Quesada resides; that Quesada has filed criminal charges against her, which would result in her incarceration if she returned to Mexico; and that she has always been the primary caregiver of the children. See Motion to Stay ¶ 2,

at 2.  K. Stoner contends that Quesada will suffer no substantial harm from the issuance of the stay based on his lack of contact with the children.  <u>See</u> Motion to Stay ¶ 3, at 2.  Lastly, she argues that granting the stay will serve the public interest, because the children are well settled in the United States.  <u>See</u> Motion to Stay ¶ 4, at 3.

On September 13, 2011, Quesada filed his Petitioner's Memorandum in Opposition to Emergency Motion to Stay (Doc. 40)("Response").  He argues that a party seeking a stay has a high burden to meet.  <u>See</u> Response at 1.  He contends that the arguments K. Stoner raises lack substantial merit and thus have a low likelihood of success on appeal.  <u>See</u> Response at 1.  He argues that K. Stoner's arguments conflict with the Court's express factual findings in its MOO.  <u>See</u> Response at 2-4.  Quesada argues that K. Stoner cannot make a showing of irreparable injury or that he will not suffer harm from the stay.  <u>See</u> Response at 3-4.  He further argues that the public interest does not weigh in favor of granting the stay based on the Hague Convention's central purpose of securing the prompt return of children wrongfully removed to or retained in any contracting state.  <u>See</u> Response at 4.

On August 22, 2011, Quesada filed his Motion to Set Deadline.  <u>See</u> Motion to Set Deadline. In his Motion to Set Deadline, Quesada argues that the Motion to Stay restates the same arguments that the Court properly rejected in its MOO.  <u>See</u> Motion to Set Deadline ¶ 3, at 1.  He contends that he reasonably believes that K. Stoner will not return the children to Mexico until and unless the Court sets a return deadline.  <u>See</u> Motion to Set Deadline ¶ 4, at 1.  He states that Article 12 of the Hague Convention expresses a policy that the relevant tribunal order the return of the children quickly.  <u>See</u> Motion to Set Deadline ¶ 5, at 1.

The Court held a hearing on these motions on September 15, 2011.  At the hearing, K. Stoner relied heavily on the factual findings that the Court had already made in its MOO as part of her

argument.  See Transcript of Hearing at 9:11-12:2, 14:8-13, 14:21-15:11 (taken September 15, 2011)("Tr.")(Rosner).[1]  Her main complaint was with the Court's legal conclusions, which led her to ask the Court for a stay so that "[o]ther minds with the same set of facts that [the Court] has found may come to a different conclusion" on various issues in the case.  Tr. at 16:6-13 (Rosner).  K. Stoner said that, if the Court orders her to return the children, she will quit her $100,000-a-year teaching job in Texas and will move back to Mexico with the children.  See Tr. at 8:19-22 (Rosner). She said that she does not want to be apart from her children, and that she feels the children need the protection she provides them from physical and emotional harm.  See Tr. at 8:23-9:1 (Rosner). K. Stoner said that she risks facing arrest and criminal charges if she returns to Mexico, because Quesada has not withdrawn the charges against her.  See Tr. at 9:2-5 (Rosner).  K. Stoner emphasized that the Court found the children have spent more time with their mother than their father.  See Tr. at 9:22-24 (Rosner).  K. Stoner stated that the Court found that the children do not have much family in Mexico.  See Tr. at 10:11-14 (Rosner).  K. Stoner argued that Quesada has drinking problems and has been abusive towards her.  See Tr. at 10:19-12:2 (Rosner).  K. Stoner argued that Quesada has attempted to control her financially by not paying any money in child support.  See Tr. at 14:1-7 (Rosner).  K. Stoner cited to cases where federal courts had attributed a great deal of significance to abusive behavior and alcoholism.  See Tr. at 17:3-11 (Rosner).  She emphasized the impact domestic violence can have on children.  See Tr. at 18:4-10 (Rosner).  She cited to various other cases that had found such an adverse impact, including Walsh v. Walsh, 221 F.3d 204 (1st Cir. 2000), and Baxter v. Baxter, 423 F.3d 363 (3d Cir. 2005).

    Quesada noted that K. Stoner's arguments were not consistent with those set forth in her

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Motion to Stay.  See Tr. at 20:13-17 (English).  He asserted that the arguments K. Stoner makes go towards custody of the children and what is in the best interests of the children, which have no place in a Hague Convention case.  See Tr. at 20:22-21:1 (English).  Quesada contended that the injury he has suffered is ongoing and severe, because he has been denied access to his children, which K. Stoner has sought to accomplish to alienate him from his children.  See Tr. at 21:9-14 (English).  Quesada reiterated that the strong public policy under the Hague Convention, requiring prompt return of the children, weighs in his favor.  See Tr. at 21:15-22 (English).  The Court explained its rationale for not setting a timeline on its original order and judgment for K. Stoner to return the children to Quesada, because: (i) Quesada had not requested a specific deadline; (ii) K. Stoner represented that she would obey the Court's orders and, to date, has done so; and (iii) given its past experience with the parties, the Court believed that the parties could work out the remaining issues amicably.  See Tr. at 4:22-5:7 (Court).  Quesada said that, after hearing the Court's explanation, he understood the Court's rationale for not setting a deadline as part of its previous order and that, if the Court would not reconsider the issue of a deadline, he would file a motion for contempt.  See Tr. at 21:21-22:4 (English).  Quesada also contested K. Stoner's characterization of his conduct as domestic violence towards the children and argument that this conduct would affect the children.  See Tr. at 22:5-17 (English).  Quesada noted that the Court has already cited a variety of cases where domestic violence between the parents did not qualify as a grave risk of physical or psychological harm, or an intolerable situation as contemplated by the Hague Convention.  See Tr. at 22:5-17 (English).  He also noted that K. Stoner has expressed her desire not to comply with the Court's order while the case is on appeal.  See Tr. at 23:5-9 (English).  K. Stoner then emphasized that she intended to comply with the Court's order.  See Tr. at 23:16-21 (Rosner).

## LAW REGARDING MOTION TO STAY PENDING APPEAL

Rule 8(a)(1) of the Federal Rules of Appellate Procedure states:

> A party must ordinarily move first in the district court for the following relief:
>
> (A) a stay of the judgment or order of a district court pending appeal;
>
> (B) approval of a supersedeas bond; or
>
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

Fed. R. App. P. 8(a)(1).  In discussing its own appellate rules, the Tenth Circuit stated in McClendon v. City of Albuquerque, 79 F.3d 1014 (10th Cir. 1996):

> 10th Cir. R. 8.1 requires the applicant to address . . . : (a) the likelihood of success on appeal; (b) the threat of irreparable harm if the stay or injunction is not granted; (c) the absence of harm to opposing parties if the stay or injunction is granted; and (d) any risk of harm to the public interest.

79 F.3d at 1020 (internal quotations omitted).  These factors require individualized consideration and assessment in each case.  See McClendon v. City of Albuquerque, 79 F.3d at 1020 (citing Hilton v. Braunskill, 481 U.S. 770, 776-77 (1987).  A stay pending appeal is always an extraordinary remedy.  See Golden Eagle Refining Co. v. United States, 4 Cl. Ct. 622, 624 (1984)(quoting Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat. Mediation Bd., 374 F.2d 269, 275 (D.C. Cir. 1966)).  A request for emergency relief also requires that the party seeking relief do so at the earliest practicable time.  See McClendon v. City of Albuquerque, 79 F.3d at 1020.

## LAW REGARDING ENFORCING AN ORDER PENDING APPEAL

The general rule is that, when a litigant files a notice of appeal, the district court loses jurisdiction over the case, save for collateral matters not involved in the appeal.  See McKissick v. Yuen, 618 F.3d 1177, 1196 (10th Cir. 2010); City of Cookeville v. Upper Cumberland Elec.

<u>Membership Corp.</u>, 484 F.3d 380, 394 (6th Cir. 2007).  A district court, however, generally retains jurisdiction to enforce its judgments.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  <u>See also</u> <u>Chaganti & Assocs., P.C. v. Nowotny</u>, 470 F.3d 1215, 1223 (8th Cir. 2006); <u>Blue Cross & Blue Shield Ass'n v. Am. Express Co.</u>, 467 F.3d 634, 638 (7th Cir. 2006).  Furthermore, a district court retains jurisdiction to enforce its orders or judgments through contempt proceedings following the filing of an appeal.  <u>See</u> <u>Chaganti & Assocs., P.C. v. Nowotny</u>, 470 F.3d at 1223.  If the judgment has been stayed or superseded, then the district court may not enforce it.  <u>See</u> <u>Santibanez v. Wier McMahon & Co.</u>, 105 F.3d 234, 238 (5th Cir. 1997).  Lastly, a district court can correct a clerical error in an order or judgment under rule 60(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>Blue Cross & Blue Shield Ass'n v. Am. Express Co.</u>, 467 F.3d at 636.

Although a district court retains jurisdiction to enforce an order or judgment, it may not alter or enlarge the scope of its order or judgment pending appeal.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  Some circuit courts, particularly the United States Court of Appeals for the Sixth Circuit, have drawn a distinction between <u>expansion</u> -- also called enlargement -- and <u>enforcement</u> of judgments.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  A district court retains jurisdiction to enforce but may not enlarge a judgment once an appeal has taken place.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.

A district court does not have jurisdiction to enlarge or expand a judgment once a party has filed a notice of appeal.  The Sixth Circuit is the main circuit that has addressed this specific issue.  In one Sixth Circuit case, the district court included in its judgment a provision that the plaintiff needed to compensate the defendant before taking the defendant's property, which included service

rights covering a particular piece of real property.  See <u>City of Cookeville v. Upper Cumberland</u>
<u>Elec. Membership Corp.</u>, 484 F.3d at 394.  The district court, however, refused to include in its
judgment the means and timing of the payments to the defendant because it found no good reason
that the parties should not be able to come to an agreement on enforcing the judgment.  See <u>City of</u>
<u>Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394-95.  While the case was
on appeal, the district court entered an injunction stating that the plaintiff was not entitled to the use
and benefit of the defendant's exclusive service rights until the defendant had been fully
compensated.  See <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at
395.  The Sixth Circuit concluded that this injunction expanded the scope of the district court's
original judgment, because the district court had "explicitly declined to determine the timing of [the
plaintiff's] payments" in the original judgment.  <u>City of Cookeville v. Upper Cumberland Elec.</u>
<u>Membership Corp.</u>, 484 F.3d at 395.

        In comparison, even if the terms of the order or final judgment lack clarity or specificity, a
district court may still enforce it through contempt proceedings.  In a Seventh Circuit case, the
district court entered an order effectively treating the parties' settlement as a consent decree.  See
<u>Blue Cross & Blue Shield Ass'n v. Am. Express Co.</u>, 467 F.3d at 638.  No formal judgment set out
the parties' obligations.  See <u>Blue Cross & Blue Shield Ass'n v. Am. Express Co.</u>, 467 F.3d at 638.
On these facts, the Seventh Circuit found it permissible for the district court to enforce the order
through contempt proceedings.  See <u>Blue Cross & Blue Shield Ass'n v. Am. Express Co.</u>, 467 F.3d
at 638.

## <u>RELEVANT LAW REGARDING THE HAGUE CONVENTION</u>

        The Hague Convention "seeks to deter parents who are dissatisfied with current custodial
arrangements from abducting their children and seeking a more favorable custodial ruling in another

country." <u>Navani v. Shahani</u>, 496 F.3d 1121, 1124 (10th Cir. 2007)(citing <u>Shealy v. Shealy</u>, 295 F.3d 1117, 1121 (10th Cir. 2002)).   The Hague Convention "creates an international legal mechanism requiring contracting states to promptly return children who have been wrongfully removed to, or wrongfully retained in, their jurisdiction, without deciding anew the issue of custody." <u>Navani v. Shahani</u>, 496 F.3d at 1124 (citing <u>de Silva v. Pitts</u>, 481 F.3d 1279, 1282 (10th Cir. 2007)).   ICARA implements the Hague Convention, and grants federal and state courts "concurrent original jurisdiction of actions arising under the Convention."  42 U.S.C. § 11603(a).

The Hague Convention states:

The removal or the retention of a child is to be considered wrongful where --

*a)* it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

*b)* at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention art. 3.  A petitioner who seeks an order returning a child to his or her country of habitual residence must show: "(1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." <u>Shealy v. Shealy</u>, 295 F.3d at 1122.  "A petitioner in an action . . . shall establish by a preponderance of the evidence --  . . . in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention."  42 U.S.C. § 11603(e)(1).

Neither the Hague Convention nor ICARA define the term "habitual residence."  Kanth v. Kanth, No. 99-4246, 232 F.3d 901, at *1 (10th Cir. Nov. 2, 2000)(table)(citation omitted).  "Rather a child's habitual residence is defined by examining specific facts and circumstances and is a term courts should not interpret technically or restrictively."  Kanth v. Kanth, 232 F.3d 901, at *1 (citing Zuker v. Andrews, 2 F.Supp.2d 134, 136-37 (D. Mass. 1998), aff'd, 181 F.3d 81 (1st Cir. 1999)(table); Harkness v. Harkness, 577 N.W.2d 116, 121 (Mich. Ct. App. 1998)(stating that "determination of 'habitual residence' depends largely on the facts of the particular case")).  In the case of a young child, "the conduct, intentions, and agreements of the parents during the time preceding the abduction are important factors to be considered."  Kanth v. Kanth, 232 F.3d 901, at *1 (citing Feder v. Evans-Feder, 63 F.3d 217, 223 (3d Cir. 1995); Pesin v. Osorio Rodriguez, 77 F.Supp. 2d 1277, 1285 (S.D. Fla. 1999)(stating that court would focus on parents' actions and shared intentions where children were four and six at time of alleged wrongful retention)).  In addition:

> [T]here must be a degree of settled purpose.  The purpose may be one or there may be several.  It may be specific or general.  All that the law requires is that there is a settled purpose.  That is not to say that the propositus intends to stay where he is indefinitely.  Indeed his purpose while settled may be for a limited period.  Education, business or profession, employment, health, family or merely love of the place spring to mind as common reasons for a choice of regular abode, and there may well be many others.  All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.

Kanth v. Kanth, 232 F.3d 901, at *1 (alteration in original)(quoting Feder v. Evans-Feder, 63 F.3d at 223).

The Hague Convention defines "rights of custody" as including "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."  Hague Convention art. 5.  Rights of custody are different from "rights of access," which the Hague Convention defines as including "the right to take a child for a limited period of time to a place other

than the child's habitual residence." Hague Convention art. 5.  "The rights of custody . . . may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."  Hague Convention art. 3.  "The Convention provides a return remedy when a parent takes a child across international borders in violation of a right of custody; [it] provides no return remedy when a parent removes a child in violation of a right of access . . . ."  Abbott v. Abbott, 130 S.Ct. 1983, 1991 (2010).

"Courts charged with deciding 'exercise' under the Convention must not cross the line into a consideration of the underlying custody dispute.  To avoid this possibility, American courts have interpreted 'exercise' broadly."  Sealed Appellant v. Sealed Appellee, 394 F.3d 338, 344 (5th Cir. 2004)(citing Friedrich v. Friedrich, 78 F.3d 1060, 1063 (6th Cir. 1996); Hazbun Escaf v. Rodriquez, 200 F.Supp. 2d 603 (E.D. Va. 2002); Freier v. Freier, 969 F. Supp. 436 (E.D. Mich. 1996); Sampson v. Sampson, 267 Kan. 175, 975 P.2d 1211 (1999)).  The Sixth Circuit has stated "that, if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child."  Friedrich v. Friedrich, 78 F.3d at 1066. See Navani v. Shahani, 496 F.3d at 1130 ("Finally, the Sixth Circuit in Friedrich articulated its test for when a custodial parent exercises custody rights under the Hague Convention: a custodial parent exercises custody rights unless the parent's actions 'constitute clear and unequivocal abandonment of the child.'"  (citation omitted)); Sealed Appellant v. Sealed Appellee, 394 F.3d at 345 ("[W]hen a parent has custody rights under the laws of that country, even occasional contact with the child constitutes 'exercise' of those rights.  To show failure to exercise custody rights, the removing parent must show the other parent has abandoned the child.").  Courts have found that occasional visitation and contribution to a child's financial support constitutes exercising custody rights.

See Whallon v. Lynn, 230 F.3d 450, 453, 459 (1st Cir. 2000)(finding that rights of custody exercised where respondent spent two weekends a month with child, lived near her, provided some financial support, drove her to school, bought her clothes, took her to the doctor, and helped her with homework); Sealed Appellant v. Sealed Appellee, 394 F.3d at 345 ("Father did not abandon his children. By visiting his children and contributing to their financial support, Father was exercising his custody rights at the time Mother removed the children from their country of habitual residence."(emphasis omitted)); Armiliato v. Zaric-Armiliato, 169 F.Supp. 2d 230, 240 (S.D.N.Y. 2001)(addressing "Ms. Zaric-Armiliato['s] claims that Mr. Armiliato was not exercising his custody rights at the time of the removal because she was Alessandra's primary care-taker," and finding that, although the child resided primarily with her mother, "Mr. Armiliato provided the sole means of financial support for Alessandra," that, "[a]fter the separation, he was in constant contact with Alessandra and visited her regularly," and that, "immediately prior to the removal, Mr. Armiliato spent the weekend caring for Alessandra at his parents home," and thus finding that "Mr. Armiliato was exercising his rights of custody at the time of the removal").

If the petitioner establishes wrongful removal or retention, "the authority concerned shall order the return of the child." Hague Convention art. 12. The Hague Convention, however "provides for several exceptions to return if the person opposing return can show any of the following": (i) "the person requesting return was not, at the time of the retention or removal, actually exercising custody rights or had consented to or subsequently acquiesced in the removal or retention;" (ii) "the return of the child would result in grave risk of physical or psychological harm to the child;" (iii) "the return of the child would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms;" or (iv) "the proceeding was commenced more than one year after the abduction and the child has

-13-

become settled in the new environment."  <u>Ohlander v. Larson</u>, 114 F.3d 1531, 1534 (10th Cir. 1997)(internal quotation marks and citations omitted).  Courts should narrowly construe the statutory exceptions, because "[t]he Convention establishes a strong presumption favoring return of a wrongfully removed child."  <u>Danaipour v. McLarey</u>, 286 F.3d 1, 13-14 (5th Cir. 2002)(citations omitted).

In Article 12, the Hague Convention provides:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.
>
> The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Hague Convention art. 12.  "In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing . . . [by] a preponderance of the evidence that . . . the exception[] set forth in article 12 . . . of the Convention applies."  42 U.S.C. § 11603(e)(2).

According to the United States Department of State, "nothing less than substantial evidence of the child's significant connections to the new country is intended to suffice to meet the respondent's burden of proof."  State Department Public Notice 957, 51 Fed. Reg. 10494, 10509 (March 26, 1986).  Courts consider several factors to determine whether a child is settled in his or her new environment, including "the age of the child, the stability of the child's residence in the new environment, whether the child attends school or day care consistently, whether the child attends church regularly, the stability of the mother's employment, and whether the child has friends and

relatives in the new area." In re Koc, 181 F.Supp. 2d 136, 152 (E.D.N.Y. 2001)(citations omitted).

> In Article 13, the Hague Convention states:
>
> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that --
>
> a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
>
> b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
>
> In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Hague Convention art. 13.  In a case for return of a child, a respondent who opposes the child's return has the burden of establishing "(A) by clear and convincing evidence that one of the exceptions set forth in article 13b . . . of the Convention applies; and (B) by a preponderance of the evidence that any other exception set forth in article . . . 13 of the Convention applies."  42 U.S.C. § 11603(e)(2).

"The consent defense involves the petitioner's conduct before the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention."  Baxter v. Baxter, 423 F.3d 363, 371 (3d Cir. 2005)(citing Gonzalez-Caballero v. Mena, 251 F.3d 789, 794 (9th Cir. 2001)).  Both the consent and acquiescence inquiries "focus on the petitioner's subjective intent."  Baxter v. Baxter, 423 F.3d at 371.

> Although the law construing the consent defense under the Convention is less developed, the defense of acquiescence has been held to require "an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time."

Baxter v. Baxter, 423 F.3d at 371 (citation omitted).  Consent does not need to be expressed with the same degree of formality, and in examining a consent defense, a court should consider what the petitioner actually contemplated and to what the parties agreed in allowing the child to travel outside his or her home country.  See Baxter v. Baxter, 423 F.3d at 371.  "The nature and scope of the petitioner's consent, and any conditions or limitations, should be taken into account. The fact that a petitioner initially allows children to travel, and knows their location and how to contact them, does not necessarily constitute consent to removal or retention under the Convention."  Baxter v. Baxter, 423 F.3d at 371 (citing Fabri v. Pritikin-Fabri, 221 F.Supp. 2d 859, 871-72 (N.D. Ill. 2001)("Many cases begin with a parent's taking the child away from home for a vacation or visit with the consent of the other parent, but nevertheless result in a Hague Convention order compelling the child's return."); Ciotola v. Fiocca, 684 N.E.2d 763, 771 (Ohio Ct. Com. Pl. 1997)(ordering return of child to Italy after petitioner allowed respondent to take child to family wedding in Ohio); Renovales v. Roosa, No. FA 91 0392232 S, 1991 WL 204483, at *1-2 (Conn. Super. Ct. Sept. 27, 1991)(unpublished)(ordering return of child to Spain after petitioner allowed respondent to take child to her parents' home in Connecticut for summer vacation)).

Regarding this grave-risk provision of the Hague Convention, the United States Department of State opined:

> This provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests.  Only evidence directly establishing the existence of a grave risk that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination.  The person opposing the child's return must show that the risk to the

child is grave, not merely serious.

A review of deliberations on the Convention reveals that "intolerable situation" was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State.  An example of an "intolerable situation" is one in which a custodial parent sexually abuses the child.  If the other parent removes or retains the child to safeguard it against further victimization, and the abusive parent then petitions for the child's return under the Convention, the court may deny the petition.  Such action would protect the child from being returned to an "intolerable situation" and subjected to a grave risk of psychological harm.

Public Notice 957, 51 Fed. Reg. 10494, 10510 (March 26, 1986).

The Sixth Circuit in Friedrich v. Friedrich indicated that it believed "that a grave risk of harm

for the purposes of the Convention can exist in only two situations."  78 F.3d at 1069.

First, there is a grave risk of harm when return of the child puts the child in imminent danger prior to the resolution of the custody dispute -- e.g., returning the child to a zone of war, famine, or disease. Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.

78 F.3d at 1069.

In Whallon v. Lynn, the United States Court of Appeals for the First Circuit found that the

exception under Article 13(b) did not apply in a case involving allegations of abuse when the

children were not targets of the abuse.  See 230 F.3d at 460.  The First Circuit noted that, in the case

before it, "the alleged instances of verbal abuse of [the respondent] and her older daughter Leah, and

of physical abuse of [the respondent], while regrettable, neither were directed at [the minor child]

nor rose to the level of the conduct of the petitioner father in Walsh[ v. Walsh]," 221 F.3d 204 (1st

Cir. 2000), where the petitioner severely beat his wife over the year, including when she was

pregnant, and many of the beatings took place in front of her two small children, see Whallon v.

Lynn, 230 F.3d at 460.  The First Circuit noted that the respondent never alleged that the petitioner

abused the minor child, either physically or psychologically.  See Whallon v. Lynn, 230 F.3d at 460.

The First Circuit also addressed the respondent's argument that separation of the minor from her

half-sister would cause psychological harm.  See Whallon v. Lynn, 230 F.3d at 460.  The First

Circuit stated:

> Whether there is a separation is Lynn's choice.  She may return to Mexico with both
> her daughters.  We do not doubt that a separation, if any, would cause difficulty.  The
> logic, purpose, and text of the Convention all mean that such harms are not per se the
> type of psychological harm contemplated by the narrow exception under article
> 13(b).  To conclude otherwise would risk substituting a best interest of the child
> analysis for the analysis the Convention requires.

Whallon v. Lynn, 230 F.3d at 460.

A district court within the Tenth Circuit has addressed the grave risk exception in the context

of allegations of abuse.  See In re Hague Child Abduction Application, No. CIV. 08-2030-CM, 2008

WL 913325, at *13-14 (D. Kan. Mar. 17, 2008).  The district court stated: "Even in those instances

where the primary abuse has been directed at the spouse, the courts only consider whether this

pattern of abuse creates a severe potential of harm to the child."  In re Hague Child Abduction

Application, 2008 WL 913325, at *13.  The district court stated: "[C]ases that have approved

invocation of the Article 13(b) exception have focused on evidence of a sustained pattern of physical

abuse and/or a propensity for violent abuse."  In re Hague Child Abduction Application, 2008 WL

913325, at *13 (emphasis omitted)(quoting McManus v. McManus, 354 F.Supp. 2d 62, 70 (D. Mass.

2005))(citing Walsh v. Walsh, 221 F.3d at 219-220).  The district court stated that, conversely,

"[e]vidence of real but sporadic or isolated incidents of physical abuse, or of some limited incidents

at persons other than the child at issue, have not been found sufficient to support application

of the 'grave risk' exception."  In re Hague Child Abduction Application, 2008 WL 913325, at *13

(emphasis omitted)(citation omitted).  The district court concluded that the record clearly established

-18-

that the petitioner never hit the minor child, harmed her in any way, or verbally abused her.  See In re Hague Child Abduction Application, 2008 WL 913325, at *14.  It stated that, at worst, the minor child witnessed her parents verbally fight and her father attempting to control her mother.  See In re Hague Child Abduction Application, 2008 WL 913325, at *14.  It found that "any instances of physical abuse by Petitioner were limited incidents aimed at persons other than the child at issue, and thus are not sufficient to support application of the 'grave risk' exception."  In re Hague Child Abduction Application, 2008 WL 913325, at *14 (emphasis omitted)(citing McManus v. McManus, 354 F.Supp. 2d at 70; Aldinger v. Segler, 263 F.Supp.2d 284, 289 (D.P.R. 2003)(finding alleged instances of abuse between the parties did not amount to a risk of "grave harm" because they were not directed at the child nor did they have the intensity of those of petitioner in Walsh v. Walsh); In re D.D., 440 F.Supp. 2d 1283, 1299 (M.D. Fla. 2006)(finding "no credible evidence that petitioner has ever physically harmed either of the two children" even though he had been verbally abusive); Giampaolo v. Erneta, 390 F.Supp. 2d 1269, 1284 (D. Ga. 2004)(finding that, despite an alleged threat against the mother, "[t]here is no evidence that Petitioner directly threatened the Child, with whom the Court is most concerned for purposes of this determination.  More significantly, there is no evidence that Petitioner ever actually harmed Respondent or the Child.")).  The district court thus found that returning the minor child to Mexico posed minimal, if any, grave physical or psychological risk to the child, or risk that the child would be in an intolerable situation.  See In re Hague Child Abduction Application, 2008 WL 913325, at *14.

The Hague Convention states: "The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms."  Hague Convention art. 20.  "In the case of an action for the return of a child, a respondent who opposes the return of the child

has the burden of establishing . . . by clear and convincing evidence that . . . the exception[ ] set forth

in article . . . 20 of the Convention applies . . . ."  42 U.S.C. § 11603(e)(2).  "The resulting language

of Article 20 has no known precedent in other international agreements to serve as a guide in its

interpretation."  Public Notice 957, 51 Fed. Reg. 10494, 10511 (March 26, 1986).

> Consequently, so as to be able to refuse to return a child on the basis of this article, it will be necessary to show that the fundamental principles of the requested State concerning the subject-matter of the Convention do not permit it; it will not be sufficient to show merely that its return would be incompatible, even manifestly incompatible, with these principles.  Secondly, such principles must not be invoked any more frequently, nor must their invocation be more readily admissible than they would be in their application to purely internal matters.

Public Notice 957, 51 Fed. Reg. 10494, 10511 (March 26, 1986).

## **<u>RELEVANT MEXICAN LAW REGARDING CUSTODY</u>**

The Civil Code for the State of Michoacan states:

> Parental authority/responsibility (*patria potestas*) over the children will be exerted: I.  By the father and mother.  II.  By the paternal grandfather and grandmother or by the maternal grandfather and grandmother, indistinctly, considering those with whom the children will have a better moral, educational, social, economical and family development.

> . . . .

> As long as the child is under parental authority/responsibility (*patria potestas*), he or she shall not leave the residence of those who exert it without their permission or by order emitted by an authority legally qualified to do so.

Michoacan Civil Code §§ 367, 373.

The Federal Civil Code[2] states:

---

[2]The Federal Civil Code serves as the national statutory code that governs throughout Mexico in federal civil matters.  <u>See</u> Jorge A. Vargas, <u>Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges</u>, 8 San Diego Int'l L.J. 475, 486 (2007).  In addition, Mexico has various state codes for the different states within the country.  <u>See</u> Vargas, <u>supra</u>, at 485.

Paternal authority/responsibility (*patria potestas*) is to be exerted over the children themselves as well as over their assets.  Regarding the care and education of the minors, parental authority/responsibility (*patria potestas*) is to be exerted in the manner prescribed by the order pronounced by the judge and in accordance with the Law of Social Prevision of Juvenile Delinquency of the Federal District (*Distrito Federal*).

. . . .

Parental authority/responsibility (*patria potestas*) is exerted by both parents.  When due to any circumstance one of them ceases to exert it, it shall be exerted by the other one.

. . . .

As long as the child is under parental authority/responsibility (*patria potestas*), he or she shall not leave the house of those who exert it without their permission or by means of an order emitted by an authority legally qualified to do so.

Federal Civil Code art. 413, 414, 421.

## ANALYSIS

K. Stoner asserts that the Court must enter an order staying the judgment pending appeal. She argues that she can meet the requirements necessary to justify a stay during the appeal of the Court's decision.  Quesada argues that the Court should set a deadline for K. Stoner's compliance with the Court's order based on her unwillingness so far to comply with the order.  Because the Court concludes that K. Stoner has not made the requisite showing to justify a stay pending appeal, the Court will deny her Motion to Stay.  Because the Court concludes that it does not have jurisdiction to alter or enlarge its prior order and judgment, the Court will deny the Motion to Set Deadline.

## I.     K. STONER HAS NOT MADE THE REQUIRED SHOWING TO JUSTIFY A STAY PENDING APPEAL.

After careful consideration of the arguments in her motion and at the hearing, the Court is not convinced that K. Stoner has made the requisite showing to justify the extraordinary relief of a

stay pending appeal.  At the hearing, she for the most part agreed with and approved of the Court's findings of fact in its MOO.  In the end, her disagreement is largely, if not solely, with the Court's legal conclusions regarding these undisputed facts.  As to that issue, K. Stoner has not shown that she has a likelihood of success on the merits on appeal.

### A.    K. STONER HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS ON APPEAL.

K. Stoner argues that Quesada did not establish a prima-facie case under Articles 3 and 4 of the Hague Convention, specifically that: (i) before removal or wrongful retention, the children were habitually residents of Mexico; (ii) the removal or retention was in breach of custody rights under the foreign country's law; (iii) Quesada was actually exercising custody rights at the time of removal or wrongful detention.  See Motion to Stay ¶ 1, at 1-2.  Quesada counters that the arguments K. Stoner raises lack substantial merit and thus have a low likelihood of success on appeal.  See Response at 1.  He asserts that the arguments K. Stoner raises conflict with the express factual findings that the Court has already made.  See Response at 2-4.

### 1.    K. Stoner Has Not Shown a Likelihood of Success on the Merits on the Issue that the Children Were Not Habitually Residents of Mexico.

Neither the Hague Convention nor ICARA define the term "habitual residence."  Kanth v. Kanth, No. 99-4246, 232 F.3d 901, at *1.  "Rather a child's habitual residence is defined by examining specific facts and circumstances and is a term courts should not interpret technically or restrictively."  Kanth v. Kanth, 232 F.3d 901, at *1.  In the case of a young child, "the conduct, intentions, and agreements of the parents during the time preceding the abduction are important factors to be considered."  Kanth v. Kanth, 232 F.3d 901, at *1.  See Pesin v. Osorio Rodriguez, 77 F.Supp. 2d at 1285 (stating that court would focus on parents' actions and shared intentions where children were four and six at time of alleged wrongful retention).  In addition:

[T]here must be a degree of settled purpose.  The purpose may be one or there may be several.  It may be specific or general.  All that the law requires is that there is a settled purpose.  That is not to say that the propositus intends to stay where he is indefinitely.  Indeed his purpose while settled may be for a limited period.  Education, business or profession, employment, health, family or merely love of the place spring to mind as common reasons for a choice of regular abode, and there may well be many others.  All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled.

Kanth v. Kanth, 232 F.3d 901, at *1.

In its MOO, the Court concluded that A. Stoner and V. Stoner were physically present in Mexico for an amount of time sufficient for acclimatization and to indicate a degree of settled purpose from a child's perspective.  See MOO ¶ 10, at 34.  The Court reached this conclusion based on its findings that they were born in Mexico, and that before their removal to the United States, they lived in Mexico and went to school there, other than for a year they spent in Los Angeles when their mother was on sabbatical.  See MOO ¶ 10, at 34.  The Court found that Quesada's and K. Stoner's shared intentions regarding their children during the time preceding the abduction reflected an intention to stay in Mexico, because Quesada and K. Stoner owned a house in Mexico, because they were professors at a university in Mexico, and because the children were registered to begin school in Mexico in August, 2010.  See MOO ¶ 11, at 34.  Consequently, the Court concluded that A. Stoner and V. Stoner were habitually resident in Mexico immediately before their removal to the United States, and that they were not habitually resident in the United States immediately before the removal or retention.  See MOO ¶¶ 12-13, at 35.

The Court concludes that K. Stoner does not have a likelihood of success on the merits on this issue.  K. Stoner has not brought any evidence to the Court's attention that persuades it that it erred in its findings.  Indeed, K. Stoner does not appear to disagree with any specific factual findings, but only disagrees with the legal conclusions drawn from those factual findings.  See Tr.

-23-

at 9:11-12:2, 14:8-13, 14:21-15:11 (Rosner)(relying on the Court's factual findings in arguing for

the Motion to Stay); Tr. at 16:6-13 (Rosner)(arguing that "[o]ther minds with the same set of facts

that [the Court] has found may come to a different conclusion" on the affirmative defense of "grave

risk of serious psychological or physical harm").  While an appellate court may view the issue

differently, the Court had the task before it of resolving the conflicting evidence on this issue.

Appellate courts normally review a district court's factfindings under the clear error standard.  See

Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set

aside unless clearly erroneous . . . .").  More specifically, the Tenth Circuit held in the context of the

Hague Convention and ICARA that appellate courts "review the district court's findings of fact for

clear error and its conclusions regarding principles of domestic, foreign, and international law *de*

*novo*."  Shealy v. Shealy, 295 F.3d at 1121.  Likewise, the "reviewing court must give due regard

to the trial court's opportunity to judge the witnesses' credibility."  Fed. R. Civ. P. 52(a)(6).  The

Court had disputed evidence before it and had to make factual determinations relating to that

disputed evidence.  K. Stoner does not dispute much, if at all, the Court's factual findings, but only

the legal conclusions that the Court drew from these facts.  Given the Tenth Circuit's deferential

standard of review of one-half of the Court's task -- fact finding --, the Court does not find that K.

Stoner has a likelihood of success on the merits of this issue on appeal.

> **2.    K. Stoner Has Not Shown a Likelihood of Success on the Merits on the Issue that the Removal Was Not in Breach of Quesada's Custody Rights Under Mexico law.**

In its MOO, the Court concluded that the issue of rights of custody in this case must be

addressed under Mexico law.  See MOO ¶ 14, at 35.  The Court found that Quesada has rights of

custody under Mexico law pursuant to both the Mexican Federal Code and the Civil Code for the

State of Michoacan.  See Federal Civil Code Articles 413, 421; Michoacan Civil Code §§ 367, 373.

See MOO ¶ 15, at 36.  The Court noted that K. Stoner even conceded that Quesada has custody rights.  See MOO ¶ 15, at 36.  The Court also noted that it need not and should not decide custody issues.  See MOO ¶ 15, at 35.  The Court then concluded that, while K. Stoner may have been fleeing domestic violence and alcoholism, K. Stoner did not have the right to remove the children. See MOO ¶ 16, at 36.  Based on these facts, the Court found that K. Stoner's removal of the children from Mexico, and retention of the children in the United States, was in breach of Quesada's custody rights under the laws of Mexico.  See MOO ¶ 17, at 37.

At the hearing, K. Stoner cited to various cases where federal courts had attributed a great deal of significance to abusive behavior and alcoholism.  See Tr. at 17:3-11 (Rosner).  She emphasized the impact domestic violence can have on children.  See Tr. at 18:4-10 (Rosner).  She cited to various other cases that had found such an adverse impact, including Walsh v. Walsh, 221 F.3d 204 (1st Cir. 2000), and Baxter v. Baxter, 423 F.3d 363 (3d Cir. 2005).  The Court recognizes K. Stoner's concerns about the impact of abuse and violence on children.  The proper inquiry before the Court, however, involves determining whether the removal or retention was in "breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention."  Hague Convention art. 3.  A district court should not relitigate the custody issue in a Hague Convention case.  Most importantly, K. Stoner has conceded that Quesada had custody rights. See Respondent's Brief in Support of Her Motion at 10, filed July 27, 2011 (Doc. 16)("Respondent readily admits that the beginning of a Hague Convention analysis would give the petitioner custody rights.").  Given her concession on the issues, the Court concludes that K. Stoner does not have a likelihood of success on appeal on this issue.  Additionally, the application of the clear error standard of review to the Court's factfindings on appeal further decreases K. Stoner's likelihood of

success on appeal.  See Fed. R. Civ. P. 52(a)(6); Shealy v. Shealy, 295 F.3d at 1121.

> **3.**     **K. Stoner Has Not Shown a Likelihood of Success on the Merits on the Issue that Quesada Was Not Actually Exercising Custody Rights at the Time of Removal or Wrongful Detention.**

"Courts charged with deciding 'exercise' under the Convention must not cross the line into a consideration of the underlying custody dispute.  To avoid this possibility, American courts have interpreted 'exercise' broadly."  Sealed Appellant v. Sealed Appellee, 394 F.3d at 344 (5th Cir. 2004)(citing Friedrich v. Friedrich, 78 F.3d at 1063; Hazbun Escaf v. Rodriquez, 200 F.Supp. 2d 603; Freier v. Freier, 969 F.Supp. 436; Sampson v. Sampson, 267 Kan. 175, 975 P.2d 1211).  The Sixth Circuit has stated "that, if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child."  Friedrich v. Friedrich, 78 F.3d at 1066.

In its MOO, the Court found that, although Quesada has not given K. Stoner money for supporting the children since July 2010, he paid the mortgage of their home where he, K. Stoner, and the children lived, and throughout the children's lives, Quesada and K. Stoner have both provided for the children's food, shelter, and education.  See MOO ¶ 18-19, at 37.  The Court found that Quesada was exercising his rights to custody at the time K. Stoner removed the children to the United States and retained them in the United States, because he and K. Stoner lived with the children, because he participated in the children's lives, and because he helped to provide the children with food, shelter, and education.  See MOO ¶ 20, at 37.

K. Stoner does not have a likelihood of success on the merits during an appeal on this issue, because she cannot easily show based on these facts that Quesada's acts constitute a "clear and unequivocal abandonment of the child."  Friedrich v. Friedrich, 78 F.3d at 1066.  She argues that

Quesada was not supporting his children.  See Motion to Stay ¶ 1, at 2.  She also argues that she was paying for all the household expenses and buying clothing, food, and other essentials for the children when she brought them with her to the United States.  See Motion to Stay ¶ 1, at 2.  While this evidence may be helpful to K. Stoner on this issue, Quesada's failure to finance her life in the United States, while paying for the family home in Mexico, does not constitute "clear and unequivocal abandonment of the child."  Friedrich v. Friedrich, 78 F.3d at 1066.  Although the appellate court may view the issue differently, that court will review these findings under a clear error standard.  See Fed. R. Civ. P. 52(a)(6); Shealy v. Shealy, 295 F.3d at 1121.  While the determination of clear and unequivocal abandonment of the child may be a legal conclusion, the factual findings on which the legal conclusions rest are not conclusions regarding principles of domestic, foreign, and international law, which the Tenth Circuit would review de novo.  Cf. Shealy v. Shealy, 295 F.3d at 1123 (reviewing a district court's findings of whether a "military necessity" existed under the Hague Convention for clear error); Miller v. Miller, 240 F.3d 392, 400-01 (4th Cir. 2001)(deferring to the district court on the issue of whether a parent wrongfully retained children under the Hague Convention).  Given the deferential standard of review for at least all of the Court's factual findings, and given that K. Stoner does not really dispute any of the factual findings, the Court concludes that K. Stoner does not have a likelihood of success on the merits on this issue.

> **4.    K. Stoner Has Not Shown a Likelihood of Success on the Merits on the Issue that the Children Face a Grave Risk of Physical or Psychological Harm, or an Intolerable Situation, if They Return to Mexico.**

At the hearing, K. Stoner also argued that Quesada's alleged past violence towards her and alcohol problems constituted a grave risk of serious physical or psychological harm to the children or an intolerable situation.  See Tr. at 16:8-13, 22:10-14 (Rosner).

A respondent must prove the grave-risk affirmative defense by clear-and-convincing

evidence.  See  42 U.S.C. § 11603(e)(2).  Regarding this grave-risk provision of the Hague

Convention, the United States Department of State opined:

> This provision was not intended to be used by defendants as a vehicle to
> litigate (or relitigate) the child's best interests.  Only evidence directly establishing
> the existence of a grave risk that would expose the child to physical or emotional
> harm or otherwise place the child in an intolerable situation is material to the court's
> determination.  The person opposing the child's return must show that the risk to the
> child is grave, not merely serious.
>
> A review of deliberations on the Convention reveals that "intolerable
> situation" was not intended to encompass return to a home where money is in short
> supply, or where educational or other opportunities are more limited than in the
> requested State.  An example of an "intolerable situation" is one in which a custodial
> parent sexually abuses the child.  If the other parent removes or retains the child to
> safeguard it against further victimization, and the abusive parent then petitions for
> the child's return under the Convention, the court may deny the petition.  Such action
> would protect the child from being returned to an "intolerable situation" and
> subjected to a grave risk of psychological harm.

Public Notice 957, 51 Fed. Reg. at 10510.

The Sixth Circuit in Friedrich v. Friedrich indicated that it believed "that a grave risk of harm

for the purposes of the Convention can exist in only two situations."  78 F.3d at 1069.

> First, there is a grave risk of harm when return of the child puts the child in imminent
> danger prior to the resolution of the custody dispute -- e.g., returning the child to a
> zone of war, famine, or disease. Second, there is a grave risk of harm in cases of
> serious abuse or neglect, or extraordinary emotional dependence, when the court in
> the country of habitual residence, for whatever reason, may be incapable or unwilling
> to give the child adequate protection.

78 F.3d at 1069.

In Whallon v. Lynn, the First Circuit found that the exception under Article 13(b) did not

apply in a case involving allegations of abuse when the children were not targets of the abuse.  See

230 F.3d at 460.  The First Circuit noted that, in the case before it, "the alleged instances of verbal

abuse of [the respondent] and her older daughter Leah, and of physical abuse of [the respondent],

while regrettable, neither were directed at [the minor child] nor rose to the level of the conduct of

the petitioner father in <u>Walsh</u> where the petitioner severely beat his wife over the year, including when she was pregnant, and many of the beatings took place in front of her two small children. <u>Whallon v. Lynn</u>, 230 F.3d at 460.  The First Circuit noted that the respondent never alleged that the petitioner abused the minor child, either physically or psychologically.  <u>See</u>  <u>Whallon v. Lynn</u>, 230 F.3d at 460.

In its MOO, the Court found that K. Stoner has not proved by clear-and-convincing evidence that there is a grave risk that the children will be subject to physical or psychological harm, or that they will face an intolerable situation, if they return to Mexico.  <u>See</u> MOO ¶ 34, at 41.  The Court found that, although Mexico is more dangerous than the United States at this time, the term intolerable situation was not meant to encompass return to a home where living conditions are less palatable.  <u>See</u> MOO ¶ 35, at 41.  The Court noted the unlikely possibility that K. Stoner would face criminal charges in Mexico and would go to jail if she returns was not clear-and-convincing evidence of psychological harm to the children, because the children may return to Mexico without K. Stoner.  <u>See</u> MOO ¶ 36, at 41-42.  K. Stoner maintained at the hearing that these criminal charges were still pending.  Quesada's attorney, Mr. Shane A. English, countered that he was not aware that these criminal charges had not already been dropped in Mexico.  <u>See</u> Tr. at 27:1-3 (English).  K. Stoner responded that she and her attorneys have concluded that the charges are still pending, because Quesada has never notified them of their dismissal or shown them proof of their dismissal. <u>See</u> Tr. at 27:16-24 (Rosner).  It is K. Stoner's burden to show, by clear-and-convincing evidence, that the children are in harm's way, and if she wants to rest on the existence of criminal charges against her as the basis for the affirmative defense, it is her burden to come forward with evidence. She cannot not rely on Quesada's failure to inform her that the charges have been dismissed.

The Court also found that K. Stoner did not prove by clear-and-convincing evidence that

Quesada's drinking or abuse of her would create a grave risk that the children would be subject to physical or psychological harm, or be put into an intolerable situation, if they are returned to Mexico. See MOO ¶ 37, at 42. Although there has been abuse directed at K. Stoner, the Court concluded there was no evidence that Quesada has abused his children or that he is an alcoholic, even though he occasionally drinks to excess. See MOO ¶ 38, at 42.

Given K. Stoner's burden to prove this issue by clear-and-convincing evidence, the Court concludes that she does not have a likelihood of success on appeal with these arguments. Furthermore, the appellate court will review the Court's factual findings under a clearly erroneous standard. See Fed. R. Civ. P. 52(a)(6); Shealy v. Shealy, 295 F.3d at 1121. Because of that deferential standard of review, K. Stoner has not shown a likelihood of success on the merits on appeal of this issue.

**B.   K. STONER HAS NOT SHOWN A THREAT OF IRREPARABLE HARM.**

K. Stoner argues that having to leave her job to be with her children constitutes irreparable harm. See Motion to Stay ¶ 20, at 2. She argues that the unrelenting violence in the area of Mexico where Quesada lives poses irreparable harm to the children as well. See Motion to Stay ¶ 20, at 2. Additionally, she argues that Quesada's filing of criminal charges against her prevents her return to Mexico. See Motion to Stay ¶ 20, at 2. Quesada counters that the Court has not ordered K. Stoner to return to Mexico and that she has a choice of whether to stay in the United States or return to Mexico. See Response at 3-4. Mr. English also stated at the hearing that he was not aware that these criminal charges had not already been dropped in Mexico. See Tr. at 27:1-3 (English). He also stated that the Court has already concluded that it is unlikely that K. Stoner will face incarceration for what she has done. See Tr. at 27:5-8 (English). K. Stoner responded that she and her attorneys have concluded that the charges are still pending because Quesada has never notified

-30-

them of their dismissal or shown them proof of their dismissal.  See Tr. at 27:16-24 (Rosner).

In its MOO, the Court made a factual finding that Quesada intends to nullify or take back the criminal charges that he has filed.  See MOO ¶ 74, 15-16.  The Court also found that, although Mexico is more dangerous than the United States at this time, the term intolerable situation was not meant to encompass return to a home where living conditions are less palatable.  See MOO ¶ 35, at 41.  K. Stoner did not take her children and leave Mexico because of the violence; she left because divorce and custody negotiations were not going her way.  The violence in Mexico played no role in her departure and should not play a role in the children's release.  Furthermore, the Court found that K. Stoner did not prove by clear-and-convincing evidence that Quesada's drinking or abuse of her would create a grave risk that the children would be subject to physical or psychological harm, or be put into an intolerable situation, if they return to Mexico.  See MOO ¶ 37, at 42.  In spite of the allegations of abuse towards K. Stoner, the Court concluded there was no evidence that Quesada has abused his children or that he is an alcoholic in spite of his occasional drinking to excess. See MOO ¶ 38, at 42.

The Court concludes that K. Stoner will not suffer irreparable harm if the Court does not grant a stay.  "In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial."  Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004).  The Court has not ordered K. Stoner to return to Mexico; she has a choice whether she will stay here in the United States or go to Mexico.  Whether she chooses to leave her job here to be with her children is a decision she controls.  That harm is not certain.  See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d at 1262.  Quesada's stated intention is to withdraw the criminal charges in Mexico, and K. Stoner has offered no specific evidence that he will not follow through, or has not

already followed through, with that intention.  Thus, that harm is also not certain.  See Dominion

Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d at 1262.  Furthermore, with respect to the

children, the Court has already found that there is no grave risk to the children that they will suffer

physical or psychological harm when they return to Mexico based on the lack of history that

Quesada has ever abused them.  The Court has also already found that, although Mexico is more

dangerous than the United States, this situation does not constitute a grave risk to the children.

Notably, the children have lived in Mexico in the recent past already.  None of the harm to which

K. Stoner points, while potentially serious, is certain and great.  See Dominion Video Satellite, Inc.

v. Echostar Satellite Corp., 356 F.3d at 1262.  Furthermore, even if K. Stoner will suffer irreparable

harm from the Court not granting the stay, this factor is only one factor in the analysis of granting

a stay that the Court must consider.

## C.   K. STONER HAS NOT SHOWN THAT THERE IS AN ABSENCE OF HARM TO QUESADA IF THE COURT GRANTS THE STAY.

K. Stoner argues that Quesada will suffer no substantial harm from the issuance of the stay

based on his lack of exercise of his visitation rights with the children during the last year they were

in the United States.  See Motion to Stay at ¶ 3, at 2.  She states that he also calls them infrequently.

See Motion to Stay at ¶ 3, at 2.  Quesada counters that he will suffer substantial harm if the Court

grants a stay.  See Response at 4.  He argues that, even if expedited, the appeals process will take

at least two months.  See Response at 4.  He contends that, in the meantime, he will be without his

children and that they will be subject to the unreasonable control of K. Stoner, who limits his

communication and access to the children.  See Response at 4.  He contends that K. Stoner continues

to wrongly influence the children against him as long as they remain in her sole control.

See Response at 4.  He argues that K. Stoner has not accepted the Court's decision in this matter and

has ignored his requests to return the children.  See Response at 4.  He argues that he has a very real concern that, as long as this continues, K. Stoner will be less likely to return the children.  See Response at 4.  Quesada argues that, until K. Stoner returns the children, he will continue to face deprivation of essentially all his parental rights without any legal remedy.  See Response at 4.

Given the significant amount of time Quesada has been away from his children and the additional delay an appeal might cause, the Court concludes that K. Stoner has failed to demonstrate that Quesada will not suffer harm if the Court grants the stay.  Given the facts, a significant potential exists that the delay in returning the children which would result from granting the stay would likely strain the relationship between Quesada and his children.  The Court also notes that granting a stay pending appeal is "always an extraordinary remedy."  Golden Eagle Refining Co. v. United States, 4 Cl. Ct. at 624 (quoting Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat. Mediation Bd., 374 F.2d at 275).

### D.   K. STONER HAS NOT SHOWN THAT THE PUBLIC INTEREST WEIGHS IN FAVOR OF GRANTING A STAY.

K. Stoner contends that the public interest justifies granting the stay because the children are already well settled in the United States.  See Motion to Stay ¶ 4, at 3.  Quesada counters that granting a stay would be contrary to the Hague Convention's central purpose of securing the prompt return of children wrongfully removed to or retained in any state covered by the Hague Convention. See Response at 4.  Furthermore, he argues that unnecessary delay makes the children's eventual return more difficult on them and further complicates the custody adjudication pending in the Mexican court.  See Response at 4.

Given the clear statement of purpose in the Hague Convention of effectuating the prompt return of children in these custody disputes, the Court concludes that the public interest weighs in

favor of not granting the stay in this case.  <u>See</u> <u>Navani v. Shahani</u>, 496 F.3d at 1124.  First, the Court has already concluded that the well-settled defense does not apply to the facts of this case.  <u>See</u> MOO ¶¶ 25-30, at 38-40.  K. Stoner offers no additional evidence that the Court has not already considered to contradict that finding.  Second, granting the stay would undermine the stated policy concerns in the Hague Convention of prompt return of children.  Given that granting a stay pending appeal qualifies as an extraordinary remedy, K. Stoner has not demonstrated that the circumstances of this case justify granting the stay.  <u>See</u> <u>Golden Eagle Refining Co. v. United States</u>, 4 Cl. Ct. at 624.

## II.   THE COURT WILL NOT SET A DEADLINE FOR K. STONER TO COMPLY WITH ITS ORDER.

Quesada has requested that the Court set a deadline for K. Stoner to comply with the order it issued requiring K. Stoner to return the children to Quesada.  The general rule is that, when a litigant files a notice of appeal, the district court loses jurisdiction over the case, save for collateral matters not involved in the appeal.  <u>See</u> <u>McKissick v. Yuen</u>, 618 F.3d at 1196; <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  A district court, however, generally retains jurisdiction to enforce its judgments.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  Although a district court retains jurisdiction to enforce an order or judgment, it may not alter or enlarge the scope of its order or judgment pending appeal.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 394.  When the Court expressly chose not to set a deadline in its order for a party to comply with that order, setting a deadline once a party has filed a notice of appeal constitutes altering or enlarging that order.  <u>See</u> <u>City of Cookeville v. Upper Cumberland Elec. Membership Corp.</u>, 484 F.3d at 395.

In his Petition, Quesada requested immediate relief, but did not ask for a specific deadline.

-34-

See Petition ¶ 14, at 8.  He also did not ask for a specific deadline at the hearing on his Petition.  The Court expressly chose not to, on its own, set a deadline on its order requiring K. Stoner to return the children to Quesada, because K. Stoner promised the Court she would comply with the Court's orders, and the Court thus believed the parties could work out the remaining issues in an amicable manner.  The Court did not omit a deadline from its order as an oversight or because of a clerical error.  See Blue Cross & Blue Shield Ass'n v. Am. Express Co., 467 F.3d at 636.  Consequently, the Court does not have jurisdiction to set a deadline for K. Stoner to comply with its order or else it would be altering or enlarging its order and judgment.  See City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d at 395.  The Court, however, still retains the power to enforce its order and judgment through contempt proceedings.  See Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d at 1223.  Consequently, the Court will deny Quesada's Motion to Set Deadline.

   **IT IS ORDERED** that: (i) the Emergency Motion for an Order Staying the Judgment Pending Appeal Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, filed August 19, 2011 (Doc. 30), is denied; and (ii) the Motion for Court to Set Deadline for Respondent to Return Children to Mexico, filed August 22, 2011 (Doc. 35), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Shane A. English
Keithly & English, LLC
Anthony, New Mexico

   *Attorney for the Petitioner*

Mary W. Rosner
Rosner Family Law Center
Las Cruces, New Mexico

*Attorney for the Respondent*